IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN AND EMILIE MCGRATH | : | CIVIL ACTION |
| v. | : | |
| RUST-OLEUM CORPORATION, ET AL. | : | NO. 12-1719 |

**MEMORANDUM**

**Padova, J.**                                                                                                           **June 11, 2013**

      Plaintiffs John and Emilie McGrath filed this tort action against Defendants Rust-Oleum Corporation ("Rust-Oleum") and Home Depot U.S.A., Inc. ("Home Depot") after rags soaked with Watco Teak Oil Finish, which Rust-Oleum manufactured and Home Depot sold, spontaneously combusted and started a fire in the McGraths' garage. Plaintiffs have filed a Motion for Partial Summary Judgment, seeking a legal ruling that the Teak Oil Finish is a "misbranded hazardous substance" under the Federal Hazardous Substances Act ("FHSA"), 15 U.S.C. §§ 1261-78, because its warning labels do not comply with the FHSA's standards. Defendants have filed their own Motion for Summary Judgment, seeking judgment in their favor on all of Plaintiffs' claims, and arguing that the warnings on the Teak Oil Finish complied with the FHSA, which preempts Plaintiffs' state law claims. After holding argument on the Motions on April 29, 2013, we now grant in part and deny in part Plaintiffs' Motion, and deny Defendants' Motion in its entirety.

**I.     BACKGROUND**

      The record facts are as follows. On June 20, 2011, Plaintiffs' home was damaged by a fire that originated in Plaintiffs' garage. (Ex. H. to Defs.' Summ. J. Mot., at 1.) On the day of the fire, Plaintiff John McGrath had used Watco Teak Oil Finish, which Plaintiff Emilie McGrath had purchased at Home Depot, to treat some outdoor teak furniture. (Id. at 3.) After applying the

Teak Oil Finish with rags, Mr. McGrath rolled up the rags in a blanket and placed them in his garage. (Pls.' Resp. to Defs.' Stmt. of Undisp. Facts ¶ 4.) For purposes of the pending Motions only, Defendants do not dispute that the rags spontaneously caught fire. (Defs.' Stmt. of Undisp. Facts ¶ 5.) A report of the Fire Marshal concluded that the fire had been caused by the improper disposal of the oil-soaked rags. (Ex. H to Defs.' Summ. J. Mot., at 3.)

The Teak Oil Finish can contained the following warning on the front of the can:

> **WARNING!** COMBUSTIBLE LIQUID AND VAPOR.
> Read carefully other warnings on side panels.

(Ex. D to Defs.' Summ. J. Mot., at 1.) The side panel of the can also contained a warning, in red type, which read as follows:

> DANGER: RAGS, STEEL WOOL OR WASTE SOAKED WITH WATCO® TEAK OIL MAY SPONTANEOUSLY CATCH FIRE IF IMPROPERLY DISCARDED. IMMEDIATELY AFTER EACH USE, PLACE RAGS, STEEL WOOL OR WASTE IN A SEALED WATER-FILLED METAL CONTAINER. FOR DISPOSAL OF RAGS AND UNUSED AMOUNTS OF PRODUCT CONTACT YOUR LOCAL OR STATE GOVERNMENT ENVIRONMENTAL CONTROL AGENCY.

(Id. at 3.)

The parties agree that the Watco Teak Oil Finish product is a "combustible" product as defined by the FHSA and the federal regulations thereunder and, as a result, it is a "hazardous substance" that is subject to FHSA regulation. See 15 U.S.C. § 1261(f)(1)(A) (providing that any substance that is combustible is a hazardous substance). Raw linseed oil is one of the components of Watco Teak Oil Finish, but linseed oil is not itself a "hazardous substance" as that term is defined by the FHSA. (Pls.' Stmt of Undisp. Facts ¶ 2; Defs.' Resp. to Pls.' Stmt. of Undisp. Facts ¶ 2; N.T. 4/29/13 at 6, 32.) Linseed oil is, however, the component of the Teak Oil Finish

2

that has the potential to cause rags, steel wool, and/or waste products that are soaked in the Finish to spontaneously combust when discarded improperly. (Defs.' Resp. to Pls.' Stmt. of Undisp. Facts ¶¶ 5, 11.) The label of the Watco Teak Oil Finish does not reference linseed oil. (See Ex. D to Defs.' Summ. J. Mot.) The only component of the Teak Oil Finish that is listed on the product label is "mineral spirits," which is itself a hazardous substance under the FHSA. (Defs.' Resp. to Pls.' Stmt. of Undisp. Facts ¶ 8.)

Plaintiffs' Complaint asserts claims against both Rust-Oleum and Home Depot for negligence, strict liability, and breach of implied warranty. All of the claims are grounded on a failure to warn theory, i.e., that the warning on the Teak Oil Finish label did not adequately warn about the product's risk of spontaneous combustion.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id. In ruling on a summary judgment motion, we "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 276 (3d Cir. 2001) (internal quotation marks omitted). If a reasonable fact finder could find in the nonmovant's favor, summary judgment may not be granted. Congregation Kol Ami v. Abington Twp., 309 F.3d 120, 130 (3d Cir. 2002).

"[A] party seeking summary judgment always bears the initial responsibility of informing

the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

## III. DISCUSSION

Plaintiffs ask in their Motion for Partial Summary Judgment that we find as a matter of law that Watco Teak Oil Finish is a "misbranded hazardous substance" under the FHSA, because the product's warning labels do not meet all of the FHSA's requirements. Defendants, on the other hand, ask in their Motion for Summary Judgment that we enter judgment in their favor on all of Plaintiffs' claims, because the undisputed record evidence establishes that the product's warnings complied in all respects with the FHSA, which pre-empts Plaintiffs' state law claims.

### A. The FHSA

The FHSA and its enabling regulations "'provide nationally uniform requirements for adequate cautionary labeling of packages of hazardous substances which are sold in interstate commerce and are intended or suitable for household use.'" Richards v. Home Depot, Inc., 456 F.3d 76, 78 (2d Cir. 2006) (quoting Milanese v. Rust-Oleum Corp., 244 F.3d 104, 109 (2d Cir. 2001). A hazardous substance is defined by the statute as "any substance or mixture of substances which (i) is toxic, (ii) is corrosive, (iii) is an irritant, (iv) is a strong sensitizer, (v) is flammable or combustible, or (vi) generates pressure through decomposition, heat, or other means." 15 U.S.C. § 1261(f)(1)(A); see 16 C.F.R. § 1500.3(b)(4)(i).

In providing national standards for the labeling of hazardous substances, "'[t]he FHSA preempts any state cause of action that seeks to impose a labeling requirement different from the requirements found in the FHSA and the regulations promulgated thereunder.'" Richards, 456 F.3d at 78 (quoting Milanese, 244 F.3d at 109); see Moss v. Parks Corp., 985 F.2d 736, 740 (4th Cir. 1993) ("[I]f the plaintiff requests a label that is more elaborate or different than the one required by the FHSA and its regulations, the claim is preempted." (quotation omitted)). "Conversely, a state cause of action may proceed if the plaintiff can show that the labeling is non-compliant [with the FHSA's requirements]." Richards, 244 F.3d at 78 (citing Milanese, 244 F.2d at 109, and 15 U.S.C. § 1262(b)). Thus, a plaintiff may assert a state law "failure-to-warn claim based on the theory that a product label failed to comply with the FHSA." Mwesigwa v. DAP, Inc., 637 F.3d 884, 887 (8th Cir. 2011) (citing Nat'l Bank of Commerce of El Dorado v. Kimberly-Clark Corp., 38 F.3d 988, 993 (8th Cir. 1994)).

Section 1261(p) of the FHSA sets forth the labeling requirements for hazardous substances. It provides, in pertinent part, that hazardous substances must bear a label:

> (1) which states conspicuously: . . . (B) the common or usual name or the chemical name (if there be no common or usual name) of the hazardous substance or of each component which contributes substantially to its hazard, unless the Commission by regulation permits or requires the use of a recognized generic name; (C) the signal word "DANGER" on substances which are extremely flammable, corrosive, or highly toxic; (D) the signal word "WARNING" or "CAUTION" on all other hazardous substances; (E) an affirmative statement of the principal hazard or hazards, such as "Flammable", "Combustible", "Vapor Harmful", "Causes Burns", "Absorbed Through Skin", or similar wording descriptive of the hazard; (F) precautionary measures describing the action to be followed or avoided; . . . [and] (I) instructions for handling and storage of packages which require special care in handling or storage; . . .

> (2) on which any statements required under subparagraph (1) of this paragraph are located prominently and are in the English language in conspicuous and legible type in contrast by typography, layout, or color with other printed matter on the label.

15 U.S.C. § 1261(p). Where a hazardous substance fails to bear a label that complies with these requirements, the FHSA denotes it a "misbranded hazardous substance." Id.

Congress has authorized the Consumer Products Safety Commission (the "Commission") to promulgate regulations that "establish such reasonable variations or additional label requirements as it finds necessary for the protection of the public health and safety." 15 U.S.C. § 1262(b). To that end, the Commission has issued regulations which, *inter alia*, "contain the Commission's interpretations and policies for the type size and placement of cautionary material on the labels of hazardous substances and contain other criteria for such cautionary statement that are acceptable to the Commission as satisfying [§ 1261(p)(2)] of the Act." 16 C.F.R. § 1500.121(a)(1). Significantly, just as labels that do not comply with the FHSA's statutory requirements may be deemed misbranded, labels that do not comply with the regulations that the Commission has promulgated may be deemed misbranded as well. 15 U.S.C. § 1262(b); 16 C.F.R. § 1500.121(a)(1).

### B. Plaintiffs' Theories of Liability

Plaintiffs' claims are all grounded on alleged failures to warn and hinge on the premise that the Watco Teak Oil Finish is a "misbranded hazardous substance." Plaintiffs contend that the Teak Oil Finish is misbranded because (1) the label does not mention that linseed oil is a component of the product, (2) the front label does not reference "spontaneous combustion" even though it is a "principal hazard," and (3) the warnings on the can are not prominently and conspicuously displayed as required by the FHSA. They ask that we find as a matter of law that

the label violated the FHSA in the first two respects and that the Teak Oil Finish is therefore a "misbranded hazardous substance."[1] Defendants argue that the undisputed record evidence establishes that the label complies in all respects with the FHSA, which preempts Plaintiff's state law claims, and that we should therefore enter judgment in their favor on all claims.

1. <u>Failure to Identify Linseed Oil on the Label</u>

Plaintiffs argue that the Watco Teak Oil Finish is a "misbranded hazardous substance" under the FHSA because the label does not mention that the product contains linseed oil, which is the only component of the Teak Oil Finish that has a hazardous self-heating capacity that can lead to spontaneous combustion.[2] In advancing this argument, Plaintiffs rely on both § 1261(p)(1)(B),

---

[1]Plaintiffs contend that there are genuine issues of material fact as to whether the label's warnings were adequately conspicuous and prominent and, therefore, they do not request that we hold that the Teak Oil Finish was a misbranded hazardous substance based on those particular labeling deficiencies.

[2]Defendants argue that we should disregard this argument altogether because it was first articulated in an untimely supplemental expert report. Our scheduling order required expert reports to be produced by September 30, 2012, responsive reports to be produced by November 30, 2012, and expert depositions to be completed by December 31, 2012. Plaintiffs initially produced an expert report from Dr. William Vigilante, which was dated October 1, 2012. Defendants produced a responsive expert report from John W. Spencer on November 30, 2012. On January 16, 2013, Plaintiffs produced the "supplemental" expert report from Dr. Vigilante, which purports to respond to Mr. Spencer's report and asserts for the first time that "Rust-Oleum's failure to display the common/usual name of the hazardous components, including Raw Linseed Oil, of the Watco Teak Oil Finish rendered the product a misbranded hazardous substance as defined in the FHSA." (Ex. F to Pls.' Summ. J. Mot., at 1.)

While Defendants argue that we should not consider Dr. Vigilante's supplemental expert report because it post-dates the deadline for expert reports, they do not cite any law to that effect or develop that argument any further. Moreover, they have since produced a responsive supplemental expert report from Mr. Spencer, have otherwise responded in full to the theories in Dr. Vigilante's supplemental report, and do not assert that they have been prejudiced by the late production of Dr. Vigilante's supplemental report. (<u>See</u> Ex. A to Defs.' Br. in Opp. to Pls.' Summ. J. Mot.) Accordingly, we will not disregard the liability theories set forth in Dr. Vigilante's supplemental report due to its untimeliness.

and 16 C.F.R. § 1500.127, maintaining that the provisions require a hazardous component such as linseed oil to be disclosed on the product label.

        a.        15 U.S.C. § 1261(p)(1)(B)

Section 1261(p)(1)(B) of the FHSA requires the label on a hazardous substance to include "the common or usual name or the chemical name (if there be no common or usual name) of the hazardous substance or of each component which contributes substantially to its hazard . . . ." 15 U.S.C. § 1261(p)(1)(B). Plaintiffs contend that, pursuant to this provision, the Teak Oil Finish label should have listed linseed oil because it is a "component which contributes substantially to [the product's] hazard." Id.

Plaintiffs, however, have fundamentally misread § 1261(p)(1)(B), which does not require that labels include the name of the hazardous substance itself as well as the names of the components of the hazardous substance but, rather, only requires that the label include either the common, usual, or chemical name of the hazardous substance itself or the common, usual, or chemical name of "each component which contributes substantially to its hazard." Id.; see also 16 C.F.R. § 1500.3(b)(14)(i)(B). Where, as here, the Teak Oil Finish is itself a hazardous substance and the label identifies it by its common or usual name, i.e., Teak Oil Finish, the FHSA does not also require that the label identify components that may contribute to the product's hazards. We therefore reject Plaintiffs' argument that § 1261(p)(1)(B) requires that the label identify linseed oil as one of the components of the product, and deny Plaintiffs' Motion insofar as it asks us to declare the Teak Oil Finish to be a "misbranded hazardous substance" on that basis.

        b.        16 C.F.R. § 1500.127

The regulations also address "Substances with multiple hazards," in 16 C.F.R. § 1500.127,

8

and require substances that present multiple hazards to include on their label "the common or usual name . . . for each hazardous component present." 16 C.F.R. § 1500.127. According to Plaintiffs, this regulation is implicated in the instant case, because the Teak Oil Finish presents multiple hazards insofar as it is (1) toxic, (2) combustible, and (3) subject to spontaneous combustion. Because linseed oil is the only component of the Teak Oil Finish that causes the product to spontaneously combust, Plaintiffs reason that it is a "hazardous component" and argue that 16 C.F.R. § 1500.127 therefore requires that it be referenced on the Teak Oil Finish label.

Defendants concede that Watco Teak Oil Finish presents "multiple hazards" (see N.T. 4/29/13 at 30-31 (acknowledging that the Teak Oil Finish is both combustible and toxic)), but argue that linseed oil is not a "hazardous component" and therefore need not be referenced on the product label. Defendants reason that only a substance that itself qualifies as a "hazardous substance" under the FHSA can be deemed a "hazardous component" under § 1500.127, and emphasize that linseed oil is not a "hazardous substance" as that term is defined by the FHSA.

Whether the Watco Teak Oil Finish label complies with § 1500.127 therefore depends upon the definition of "hazardous component," and whether linseed oil falls within that definition. Although the FHSA defines "hazardous substance," neither it nor the regulations provide a definition for "hazard," "hazardous," or "hazardous component." While Defendants maintain that "hazardous component" is essentially synonymous with "hazardous substance," such a reading is contrary to the basic rule of statutory interpretation that "when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." Sosa v. Alvarez-Machain, 542 U.S. 692, 711 n.9 (2004); see Lewis v. Atlas Van Lines, Inc., 542 F.3d 403, 409 (3d Cir. 2008) ("'The basic tenets of statutory

9

construction apply to construction of regulations . . . .'" (quoting Pa. Fed'n of Sportsmen's Clubs, Inc. v. Kempthorne, 497 F.3d 337, 351 (3d Cir. 2007))).

Had the Commission intended to require that only FHSA-defined hazardous substances be referenced on the labels of products presenting multiple hazards, we have no doubt that it would have used the defined term "hazardous substance" in § 1500.127. Instead, it used the term "hazardous component," which we read in its plainest sense to mean any ingredient of the hazardous substance that itself presents a risk of harm or danger. See Merriam-Webster's Collegiate Dictionary, 11th ed., at 572 (2005) (defining "hazardous" as "involving or exposing one to risk (as of loss or harm)," and defining "hazard" as "a source of danger"); id. at 255 (defining component as "a constituent part: INGREDIENT"). Given the undisputed facts that the improper disposal of rags soaked in Teak Oil Finish presents a danger of spontaneous combustion, and that the only component of the Teak Oil Finish that causes it to spontaneously combust is linseed oil, we find as a matter of law that linseed oil is, in fact, a "hazardous component" of the Teak Oil Finish.

This conclusion is consistent with the "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." Davis v. Michigan Dep't of Treasury, 489 U.S. 803, 809 (1989) (citing United States v. Morton, 467 U.S. 822, 828 (1984)). Defendants argue that it is simply illogical to read the FHSA to require the label to reference a component that the statute does not even consider a "hazardous substance." However, the purpose of the FHSA is to "'provide nationally uniform requirements for adequate cautionary labeling of packages of hazardous substances which are sold in interstate commerce and are intended or suitable for household use.'" Moss v. Parks Corp.,

985 F.2d 736, 739 (4th Cir. 1993) (quoting House Comm. on Interstate and Foreign Commerce, Federal Hazardous Substances Labeling Act, H.R. Rep. No. 1861, 86th Cong., 2d Sess. 2 (1960), reprinted in 1960 U.S.C.C.A.N. 2833, 2833). The statute makes clear that "adequate cautionary labeling" is labeling that is necessary to protect "the public health and safety." See 15 U.S.C. § 1262(b). Where, as here, a component of a "hazardous substance" threatens the public health and safety by creating a danger of spontaneous combustion, it would be inconsistent with the FHSA's statutory purpose to disavow that known threat by failing to recognize the component as a "hazardous component," and then preempt all state law claims grounded on a failure to warn about that component. Rather, we find that, reading the phrase "hazardous component" "in [its] context and with a view to [its] place in the overall statutory scheme," it must include components that pose known dangers to public health and safety, even if the components do not otherwise constitute "hazardous substances" under the FHSA. Davis, 489 U.S. at 809.

In sum, because 16 C.F.R. § 1500.127 requires "hazardous component[s]" to be referenced on the product label, and because we conclude that linseed oil is a "hazardous component," which is not referenced on the Watco Teak Oil Finish label, we find as a matter of law that the product label violates § 1500.127 and is, consequently, a "misbranded hazardous substance." We therefore grant Plaintiffs' Motion insofar as it asks us to declare the Teak Oil Finish to be a "misbranded hazardous substance" on that basis. For the same reason, we deny Defendants' Motion, which asks that we enter judgment for Defendant based on a conclusion that the label of the Teak Oil Finish complies in all respect with the FHSA, thereby preempting Plaintiffs' state law claims.

## 2. Failure to Provide Affirmative Statement as to All Principal Hazards

Plaintiffs further contend that we should hold as a matter of law that the Watco Teak Oil Finish is a "misbranded hazardous substance" because it failed to specifically reference the risk of spontaneous combustion on its principal label and, instead, only warned that the product was "combustible." See 15 U.S.C. § 1261(p)(1)(E) (requiring the label panel to contain an affirmative statement of the principal hazard or hazards); 16 C.F.R. § 1500.121(b)(2)(ii) (requiring the statement of principal hazard or hazards to be located on the principal display panel). According to Plaintiffs, the risk of spontaneous combustion is a separate and distinct hazard from the risk of combustion more generally and, thus, is a separate "principal hazard." Defendants counter that spontaneous combustion is merely a subset of "combustibility" and, thus, does not qualify as a separate "principal hazard."

The FHSA does not provide a definition for the term "principal hazard." It does, however, provide the following examples: "Flammable," "Combustible," "Vapor Harmful," "Causes Burns," and "Absorbed through Skin." 15 U.S.C. § 1261(p)(1)(E). The regulations describe "principal hazard" as "the principal or primary hazard(s) associated with a hazardous substance," 16 C.F.R. § 1500.121(a)(2)(vii), and provide four examples: "harmful or fatal if swallowed," "vapor harmful," "flammable," and "skin and eye irritant," id.

In arguing that spontaneous combustion is not a subset of combustibility, but rather is a separate and distinct hazard, Plaintiffs point to the definition of "combustible" in the regulations. The regulations state that a product is considered "combustible" if it has "a flashpoint at or above 100 ºF (37.8 ºC) to and including 150 ºF (65.6 ºC) as determined by the test method described in 1500.43a," which involves exposure to a "test flame." 16 C.F.R. §§ 1500.3(c)(6)(iii),

12

1500.43a(b); see 15 U.S.C. § 1261(l)(1) (providing that the term "combustible" shall be defined by regulation). Plaintiffs argue that this definition in no way incorporates the concept of spontaneous combustion, which arises not upon exposure to an external heat source, but rather occurs when a "product dries on other materials," "produce[s] heat on its own as the reaction proceeds," and "ignite[s] the [other] materials to which the oil has been exposed." (Pls.' Mem. in Supp. of Summ. J. Mot., at 22.) Plaintiffs maintain that this is a unique risk that is itself a principal or primary hazard.[3]

Defendants dispute that the "spontaneous combustion" hazard is different from the "combustibility" hazard, and point to Penwell v. Rust-Oleum Corp., No. 06-C-337-S, 2006 WL 3792660 (W.D. Wis. Dec. 22, 2006), to support their contention. The Penwell plaintiffs, like Plaintiffs here, argued that a wood stain product violated the FHSA labeling requirements because the principal display panel failed to identify spontaneous combustion as a principal hazard. Id. at *2. The court in Penwell rejected this argument, stating as follows:

> Concerning the front panel, FHSA provisions and related regulations make clear that "combustible" is the proper principal hazard to be identified. 15 U.S.C. § 1261(p)(1)(E) requires that a label include "an affirmative statement of the principal hazard or hazards, such as 'Flammable', 'Combustible', 'Vapor Harmful', 'Causes Burns', 'Absorbed Through Skin', or similar wording descriptive of the hazard. The principal hazard at issue here is

---

[3]To emphasize the distinct nature of the two risks, Plaintiffs note that the two risks require "distinctly different safety measures to avoid [their] hazards." (Pls.' Mem. in Supp. of Summ. J. Mot. at 22.) While a user can avoid the risk of a merely combustible product by keeping it away from heat, pressure or other ignition sources, these same safety measures are insufficient in the face of a spontaneous combustion risk, which requires the user to follow procedures such as those set forth on the side panel of the Watco Teak Oil Finish can, which concern the proper disposal and/or storage of teak oil-soaked rags and waste. Plaintiffs therefore contend that "[a] consumer who fully and completely appreciates the principal hazard of 'combustibility' would have no reason to take the unique safety steps necessary to prevent the spontaneous combustion hazard," thereby making it necessary to warn separately about spontaneous combustion. (Id. at 23.)

> combustibility and defendant used the term prescribed by statute to warn of that hazard. The statute makes clear that "combustible" is the appropriate level of specificity. All combustible materials combust under various conditions such as exposure to heat, pressure ignition sources, etc. These individual conditions are not the principal hazard as defined by the statute. Spontaneous combustion is not a separate principal hazard which must be separately listed but is a condition of combustibility properly encompassed by the principal hazard identified on the front label.

Id.

Unlike the court in Penwell, and rejecting Defendants' suggestion to the contrary, we do not believe that the FHSA permits a reasonable conclusion that "spontaneous combustion" is a subset of "combustibility." Indeed, given the definition of "combustible" provided in the regulations, which hinges on a substance's "flashpoint" when exposed to an external flame, see 16 C.F.R. §§ 1500.3(c)(6)(iii), 1500.43a(b), it is clear that the hazard of spontaneous combustion, which is not contingent upon exposure to an external heat source, is not a subset of combustibility as the statute has defined it. Indeed, this is confirmed by the undisputed fact that linseed oil is not a "hazardous substance" under the FHSA, in part because it does not meet the statutory definition of "combustible." (See N.T. 4/29/13 at 6, 32.) We therefore agree with Plaintiffs that spontaneous combustion is a hazard that is distinct from combustibility generally.

At the same time, however, we reject Plaintiffs' assertion that "spontaneous combustion" is a principal hazard under the statute. Although the FHSA does not define "principal hazard," it is plain that the statute does not consider spontaneous combustion to be a principal hazard as it does not even consider a substance to be a "hazardous substance" when its only hazard is that of spontaneous combustion. (See Ex. B to Pls.' Summ. J. Mot., at 2 (stating that linseed oil has the capacity to undergo spontaneous combustion); N.T. 4/29/13 at 6, 32, 34.) Indeed, the FHSA and

accompanying regulations never even reference spontaneous combustion, and we are aware of no court that has recognized spontaneous combustion as a separate "principal hazard" under the statute. There is therefore no reasoned basis on which we could find that spontaneous combustion is a "principal hazard" under the FHSA and we find, as a matter of pure logic, that a "principal hazard" must be a danger that the statute considers sufficient to render a product a "hazardous substance." Because spontaneous combustion is not such a danger, we conclude that it cannot constitute a "principal hazard" under the FHSA.[4]

We therefore reject Plaintiff's argument that the Teak Oil Finish is a "misbranded hazardous substance" by virtue of its failure to reference "spontaneous combustion" as a principal hazard, and find to the contrary that the label complies with the requirements in 15 U.S.C. § 1261(p)(1)(E) and 16 C.F.R. § 1500.121(b)(2)(ii) that it include principal hazards on the principal display panel.

### 3. Failure to Make the Cautionary Wording Prominent and Conspicuous

In their third and final theory of liability, Plaintiffs contend that the Teak Oil Finish was misbranded because the label did not comply with the FHSA's prominence and conspicuousness requirements, but they add that we should not grant summary judgment for either party with respect to this theory because there are genuine issues of material fact as to whether the label complies with the statute's prominence and conspicuousness requirements. Defendants maintain that the undisputed facts establish that the Teak Oil Finish label meets all of the FHSA's requirements for conspicuousness and prominence and, thus, Plaintiffs' claims are preempted

---

[4] We emphasize that our decision in this regard is in no way reflective of a conclusion that spontaneous combustion is not a hazard. Rather, we merely hold that it cannot be deemed a principal hazard under the FHSA.

insofar as they rest on allegations that the label did not meet those requirements.

      a.  Regulations regarding Prominence and Conspicuousness

        i.  Prominence

  The regulations set forth precise standards that must be satisfied to meet the FHSA's requirement that cautionary labeling statements shall appear "prominently" on the label of a hazardous substance. Among other things, the regulations require that cautionary statements be oriented horizontally on the package, "parallel to any base on which the package rests." 16 C.F.R. § 1500.121(b)(1). They also state that the statutorily-required signal word (e.g., CAUTION or WARNING), and the statement of principal hazards must appear on the packaging's "principal display panel," which is "the portion(s) of the surface of the immediate container . . . which bear(s) the labeling designed to be most prominently displayed, shown, presented, or examined under conditions of retail sale." Id. §§ 1500.121(b)(2)(iii), 1500.121(a)(2)(iv). In addition, "if appropriate," the principal display panel must include "instructions to read carefully any cautionary material that may be placed elsewhere on the label." Id. § 1500.121(b)(2)(ii). All of the cautionary items appearing on the principal display panel -- the signal word, the statement of principal hazards, and the instructions to read other cautionary material -- "shall be blocked together within a square or rectangular area, with or without a border, on the principal display panel." Id. § 1500.121(b)(2)(ii). "All items of cautionary labeling . . . that do not appear on the principal display panel shall be placed together on a display panel elsewhere on the container." Id. § 1500.121(b)(3). Moreover, "[w]here cautionary material appears on a display panel other than the principal display panel, the principal display panel shall bear the statement 'Read carefully other cautions on the _____ panel,' or its practical equivalent." Id.

16

ii. Conspicuousness

The regulations also provide detailed guidance regarding the FHSA's requirement that cautionary labeling statements be "in conspicuous and legible type in contrast by typography, layout, or color with other printed matter." Id. § 1500.121(a)(1); see 15 U.S.C. § 1261(p)(2). In this regard, the regulations provide for particular type size and style, including guidance regarding the use of color for contrast. See 16 C.F.R. § 1500.121(c), (d). At the same time, the regulations emphasize that the type sizes provided in § 1500.121(c) are minimums and add that the "size of the cautionary labeling shall be reasonably related to the type size of any other printing appearing on the same panel." Id. § 1500.121(c)(2)(i). The regulations further direct that the signal word and statement of principal hazard(s) must appear in capital letters. Id. §§1500.121(c)(6)(ii). Moreover, they reiterate that if all of the cautionary material does not appear on the principal display panel, "the statement to 'Read carefully other cautions on the _____ panel,' or its practical equivalent" must appear on that label, and they add that this statement must be in the same type size as that required for "other cautionary material." Id. § 1500.121(c)(2)(iii).

In further addressing conspicuousness by contrast, the regulations state that "[w]here color is the primary method used to achieve appropriate contrast," the color "shall be in sharp contrast with the color of the background upon which such a statement appears." Id. § 1500.121(d)(1). "Examples of combinations of colors which may not satisfy the requirement for sharp contrast are: black letters on a dark blue or dark green background, dark red letters on a light red background, light red letters on a reflective silver background, and white letters on a light gray or tan background." Id. The regulations also address what is deemed "interference with

17

conspicuousness," stating that "[f]or cautionary information appearing on panels other than the principal display panel, the label design, the use of vignettes, or the proximity of other labeling or lettering shall not be such that any cautionary labeling statement is obscured or rendered inconspicuous." Id. § 1500.121(d)(2).

b. Analysis

Plaintiffs' expert, Dr. Vigilante, a human factors expert, identifies several deficiencies in the Teak Oil Finish label that he opines do not comply with the standards for conspicuousness and prominence in the FHSA and the underlying regulations. Among those alleged deficiencies are violations of certain subjective components of the regulations, including the requirement that where color is the primary method to achieve contrast, the text color must be in "sharp contrast" to the color of the background panel, 16 C.F.R. § 1500.121(d)(1), and the requirement that certain type sizes be "reasonably related to the type size of any other printing appearing on the same panel," id. § 1500.121(c)(2)(i).

Dr. Vigilante contends, *inter alia*, that the cautionary information on the principal display panel does not comply with these regulations because (1) the warning is in white lettering, which is similar to the background color of the majority of the display panel and thus is not in a "sharply" conspicuous color, see id. § 1500.121(d)(1); and (2) the signal word WARNING is in a type size that is 77% smaller than the Watco brand name and 60% smaller than the lines of text on the display panel, while the words "Combustible Liquid and Vapor" are 87% smaller than the Watco brand name and smaller than 67% of the other text and, thus, both texts violate the FHSA requirement that the "size of the cautionary labeling shall be reasonably related to the type size of any other printing appearing on the same panel." Id. § 1500.121(c)(2)(i); (Ex. E to Pls.' Summ.

18

J. Mot., at 7-8.)

Defendants maintain that the warnings on the Teak Oil Finish were fully compliant with the FHSA's standards for prominence and conspicuousness. Defendants submit the expert report of Mr. Spencer, who opines that the white type is on a solid, contrasting dark blue field, which presents a sharp contrast that complies with the statute. (Ex. A to Defs.' Br. in Opp. to Pls.' Summ. J. Mot., at 4.) In support of his opinion, he observes that this color combination is not listed in the regulations as an "example of combinations of colors which may not satisfy the requirement for sharp contrast" and asserts that the Commission has cited white letters on a dark background as an example of an acceptable label. (Id. at 5.) He further opines that the type size of the warnings are "reasonably related" to other printed matter, stating that the signal word is 77% smaller than the brand name, and noting that the Commission's Office of Compliance has presented examples of "good label design" in which the signal word was up to 83% smaller than the brand name. (Ex. C to Defs.' Summ. J. Mot., at 10.) Mr. Spencer adds that the signal word "WARNING" is bigger than all of the text on the primary display panel except for the words "WATCO" and "TEAK OIL." (Ex. A to Defs.' Br. in Opp. to Pls.' Summ. J. Mot., at 4.)

Whether the Teak Oil Finish label complies with 16 C.F.R. §§ 1500.121(c)(2)(i) and 1500.121(d)(1) are highly factual inquiries that we cannot resolve on the existing factual record. See, e.g., Penwell, 2006 WL 3792660, at *2 ("In light of the factual nature of the assessment and the conflicting testimony, it cannot be determined as a matter of law whether the overall label design and proximity of the warning to other lettering renders the cautionary statement inconspicuous.") Indeed, as the conflicting expert opinions reflect, there is significant room for factual disagreement as to what is "sharp" contrast, and what is "reasonably related." Thus, on

the existing record, we conclude that there are genuine issues of material fact as to whether the label meets the FHSA requirements for prominence and conspicuousness, and that a reasonable jury could find in either party's favor. Anderson, 477 U.S. at 248.

For this reason, as well as because we find the product to be misbranded due to its label's failure to identify linseed oil as a hazardous component, we reject Defendants' argument on summary judgment that the undisputed evidence supports a finding that the Teak Oil Finish Label complies in all respects with the FHSA's requirements and that Plaintiffs' state law claims are thus preempted.

## IV. CONCLUSION

For the foregoing reasons, we grant Plaintiffs' Motion for Partial Summary Judgment insofar as it requests that we find that the Watco Teak Oil Finish is a misbranded hazardous substance because it fails to reference linseed oil as a hazardous component on its label, but we deny Plaintiffs' Motion in all other respects. At the same time, we deny Defendants' Motion for Summary Judgment in its entirety.

An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.
_____
John R. Padova, J.